UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WALTER HOUSTON                          CIVIL ACTION NO. 12-cv-1289

VERSUS                                  JUDGE HICKS

WARDEN WINN CORRECTIONAL                MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

**Introduction**

Walter Houston ("Petitioner") was charged with three counts of aggravated rape and five counts of molestation of a juvenile, all based on alleged acts that Petitioner performed on or with young relatives. A Caddo Parish jury acquitted Petitioner of the rape charges, but convicted him on all five counts of molestation of a juvenile.

Petitioner filed a direct appeal, and the state appellate court found that the evidence was not sufficient with respect to one of the molestation convictions. That conviction was vacated, but a judgment was entered for conviction of the lesser offense of attempted molestation of a juvenile on that count, and the matter was remanded for resentencing on the lesser offense. Several other arguments raised on appeal were discussed at length, but no further relief was granted. State v. Houston, 925 So.2d 690 (La. App. 2d Cir. 2006). Petitioner sought a discretionary writ of review from the Supreme Court of Louisiana (Tr. 686), but that court denied review without comment. 939 So.2d 373 (La. 2006). Meanwhile,

the trial court imposed a new sentence on the reduced conviction, and that sentence was affirmed on appeal.  State v. Houston, 954 So.2d 311 (La. App. 2d Cir. 2007).

Petitioner then sought federal habeas relief in 06 CV 2384.  The State filed the state court record and briefed the issues on the merits, and the undersigned issued a Report and Recommendation.  Petitioner then asked to dismiss the case without prejudice so that he could return to state court and exhaust an ineffective assistance of counsel claim.  The district judge granted the request.  After several years in the state courts, Petitioner has now returned and filed this new petition that reasserts most of his prior claims plus an additional ground for ineffective assistance.   For the reasons that follow, it is recommended that the petition be denied.[1]

**Sufficiency of the Evidence**

### A. Introduction; Section 2254(d) Burden

Petitioner argues that the evidence was not sufficient to support his convictions. He also argues that the state court erred in denying his motion for post-verdict judgment of acquittal.  That argument is also an attack on the sufficiency of the evidence.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

---

[1] The state court record consists of the four-volume trial and appellate record filed in 06 CV 2384 (pages 1 - 907), which was incorporated into this proceeding, and the supplemental five-volume record (pages 1 - 1247) related to the post-conviction proceedings. Citations in this Report and Recommendation are to the trial and appellate record except with respect to the post-conviction claim.

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).  The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The Louisiana appellate court set forth and applied the Jackson standard to these claims on Petitioner's direct appeal and denied relief on the merits.  Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Supreme Court has stated that a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).  Even if the federal court, in its independent judgment, has a firm conviction that the state court was

incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief.  Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166, 1175 (2003).

### B. Elements of the Crime

Petitioner was convicted under La. R.S. 14:81.2(A), which defined molestation of a juvenile as follows:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

### C. Female Juvenile JL

JL testified that she was a 16-year-old high school junior at the time of the trial.  Her younger siblings (DS and SA) and her younger cousins (KJ and TJ) are also victims in the case.  JL described Petitioner as her step-grandfather.  She explained that Petitioner was married to her maternal grandmother.

The prosecutor played a videotape of an interview that JL gave at the Gingerbread House, which is part of a program in which a trained interviewer speaks to possible child victims early in an investigation in an effort to get a reliable, recorded statement and avoid multiple interviews of the child by different detectives and agencies.  JL stated during her

interview at the Gingerbread House that she was then 14 years old and enrolled in the ninth grade at a reputable local high school.  JL testified that she was alone at her grandmother's house with Petitioner, or Pa Paw as the children then called him, and she was talking on the telephone with one of her friends.  Afterwards, JL said, Petitioner offered to give JL a cell phone with minutes purchased if she would let him perform oral sex on her.  JL said no, but Petitioner kept repeating his offer. JL said Petitioner made other comments about her having a "big butt" or being "fine" and that he would marry her if she was grown.  JL said that Petitioner told her that if she told anybody he would hurt her in a bad way and she would not be able to see her grandmother again.  JL did not report the events until after another of the child victims came forward to an adult. JL testified in court that her statements during the Gingerbread House interview were true, and she identified Petitioner in court.  Tr. 347-54 and 162-77.

The state appellate court found that this evidence was not sufficient under Jackson to sustain a conviction for molestation of JL, but it found that the evidence did support a conviction for the lesser included offense of attempted molestation.  An attempt requires specific intent to commit the crime and an act or omission for the purpose of and tending toward the accomplishing of the object.  Mere preparation, however, is not sufficient to constitute an attempt.  La.R.S. 14:27.  The appellate court cited cases in which attempt convictions were upheld based on a predatory act such as the use of a coercive position to place a child in a position or situation where molestation could more easily be accomplished. The court found that Petitioner's request for oral sex on his 14-year-old step-granddaughter

(whom he was alone with) in exchange for a cell phone was a predatory act that constituted more than a mere preparation and constituted the crime of attempt.

Petitioner argues that he was convicted for simply asking a question. As the state court noted, Petitioner asked the question while occupying a coercive and authoritative position, and he proposed a goods for sex transaction that would have resulted in a felony being committed upon a child.  Houston, 925 So.2d at 697-98. The state appellate court's decision is supported by logic, rooted in state appellate precedent, and is not an objectively unreasonable adjudication of Jackson to the sufficiency issue.  Accordingly, habeas relief is not permitted with respect to this argument.

### D. Female Juvenile SA

SA, who was 10 years old and in the fourth grade at the time of trial, testified that she recalled making her statement at the Gingerbread House, and she affirmed that her statements made during the interview were true.  SA was eight years old when she gave her Gingerbread House interview.

SA stated in the interview that Petitioner had touched her on her butt and her private more than one time, but always on top of her clothes.  She described how Petitioner would call her to him when he was watching football and her grandmother was at work or school. She said Petitioner would pick her up and sometimes start "feeling on my butt."  She described similar touchings that happened in the swimming pool.  Tr. 177-87 and 329-35.

Dr. Ann Springer, an expert in the field of child abuse, conducted a physical examination of SA at the request of the police.  There were no abnormal findings except the

anal opening, where Dr. Springer noted multiple fissures that were still healing and chronic. She diagnosed sexual abuse with anal penetration.  Dr. Springer stated that these would be "unusual injuries" if the child were never touched except through her clothes.  Tr. 403-12 (None of the other children had physical evidence of abuse, but two experts testified that this is true of approximately 80% of proven abuse victims.)

The state appellate court reasoned that when SA's testimony was viewed in its totality, the described behavior by Petitioner permitted the jury to infer that Petitioner tried to sexually arouse himself or the victim by feeling her buttocks.  Petitioner argues that it is just as likely that the touchings were inadvertent and not done with intent to raise the sexual desires of either person.  The explanation of innocent contact was a proper one to present to the jury, but the jury had other evidence, including SA's statement that she resisted the contact, from which it could reasonably infer that the touchings were performed with a criminal intent.  Once the jury assessed the evidence and made its decision, the Petitioner's hopes for relief rested solely upon the deferential Jackson standard.  The state appellate court conscientiously applied that standard to the evidence and determined that Petitioner's conviction should stand.  Houston, 925 So.2d at 700-01. This court, after reviewing the evidence with respect to SA, cannot say that the state court's adjudication of this claim was an objectively unreasonable application of Jackson, so habeas relief is not permitted.

### E. Female Juvenile KJ

KJ testified at trial that she was then nine years old.  She had been seven and in the first grade when she gave her Gingerbread House interview.  KJ stated during the interview

that Petitioner "licked me and my sister private" when the girls had their clothes off.  The events were said to have occurred in the den and a bedroom.  She said that Petitioner also made her lick his private, which looked like a "big hot dog" and tasted nasty.  She said Petitioner also put his private "on my butt and my cootie."  She said Petitioner used baby oil on her and her sister, and she described acts of penetration.  These events happened "about 100 times" and that they "keep going" even after she reported the events to her mother.  KJ also described an event in the swimming pool when Petitioner pulled his pants down, removed most of KJ's clothing, and then put his private part on her body.  Tr. 114-34.

KJ confirmed at the trial that her earlier statements were true.  Tr. 335-46.  Dr. Jennifer Rodriguez testified that she examined KJ and her sister, and the examination of the vaginal and anal areas produced a "normal" exam.  She explained, as noted above, that studies have shown that 80% of abused children will have a normal exam despite otherwise confirmed sexual abuse.  Tr. 395-403.

Petitioner argues that KJ's testimony is that of a confused and easily influenced child. He points out her highly unlikely testimony that the abuse continued even after she reported it to other adults.  There was, however, plenty of specific testimony from the child that described serious sexual abuse.  The state appellate court determined that, considering the evidence in the light most favorable to the prosecution, a rational fact finder could have found Petitioner guilty of molesting KJ. Houston, 925 So.2d at 701-02. That determination is not an objectively unreasonable application of the Jackson standards to the facts, so habeas relief is not available.

### F. Female Juvenile TJ

TJ testified that she was six years old at the time of trial.  She admitted that she was scared during the trial, and most of her answers to questions were limited to yes, no, or head shakes. When the focus turned to inconsistencies in the child's Gingerbread House interview, the child was asked if she said anything during the interview that wasn't true.  "Yes," she answered, but when she was asked what she said that was not true, she responded only, "I don't know."  Otherwise, she agreed that her statements about Petitioner touching her were true.  Tr. 320-28.

TJ was four and one-half years old when she gave her interview at the Gingerbread House.  TJ first said nothing happened to her and that her mother had told her not to talk about it.  Once assured that it was okay to talk about the subject, the child said that Petitioner kissed her on her "booty" and used his hands to "dig" in her "kitty."  She was shown a picture of a male body and directed to the penis, and asked if Petitioner ever put his anywhere on her body.  The child said that he did put it in her kitty and booty while she was lying on her back, which she demonstrated with dolls.  She said her sister "sucked Pa Paw uh kitty cat."  But she did not do so.  She described Pa Paw's kitty cat as looking like a "wienie dog."  She also described seeing Petitioner ejaculate, and she said he used an orange lotion on her that was used for dishes.  Tr. 134-49.

Petitioner points to the child's initial statement that nothing happened to her, but that was in response to a general question and was made before the child was assured that it was okay with her mother to talk about the events.  In contrast, however, the child described quite

graphically for a four year old acts of digital, oral and genital sexual contact, including the application of a lubricant and an ejaculation.  The state appellate court reasoned that the jury "must have believed" the latter portions of the testimony, and, when the evidence was viewed in the light most favorable to the prosecution, that was a rational decision that did not warrant relief under Jackson.  Houston, 925 So.2d at 699-700.  That state court decision, similarly, was not an objectively unreasonable application of Jackson to the record, so federal habeas relief is not permitted.

### G.    Male Juvenile DS

DS testified at trial that he was 12 years old.  He was 10 years old and in the third grade when he was interviewed at the Gingerbread House.  DS said that when Petitioner was in the pool he made DS's sister and two cousins "get on top of him" while they were all wearing bathing suits.  Petitioner then told the girls to pull their suits to the side.  DS said he never saw Petitioner's private parts touch the girls, but the girls said that there was contact. DS said at one point that Petitioner threatened the girls if they told anyone, but DS was clear that he did not claim to have actually heard the threats when they were made; he was merely repeating what he had heard from others. DS said that when the girls would sit on Petitioner's lap in the pool, he "just saw him trying to move them" and "hunching them."  He said that as he watched, Petitioner told one of the girls that DS "was jealous and uh and I said I wasn't jealous."  Tr. 187-96.

At trial, when asked about the videotaped interview, DS said it was not truthful when he said Petitioner had threatened to kill his sister.  He said he did not hear Petitioner make

such a statement, but heard a report from his sister.  He said everything else was true.  DS added that he had seen Petitioner naked at the pool before, but he forgot to mention that during the interview.  Tr. 354-64.

There was no evidence that Petitioner committed any lewd or lascivious act upon the person of DS, but the statute permits conviction if such an act is performed "in the presence of" a child with the requisite intent and other factors.  KJ offered testimony about acts of abuse in the swimming pool that were consistent with DS's description.  On the other hand, DS was inconsistent on some facts, and the statements made by the children about the events in the pool were not all in line.

The state appellate court correctly recognized that when there is conflicting testimony about factual matters, the resolution of which depends on an assessment of credibility, the matter is one entrusted to the jury.[2]  The state court determined that when the evidence was viewed in the light most favorable to the prosecution, as required by <u>Jackson</u>, a rational fact finder could have found that Petitioner was guilty of molestation of DS. <u>Houston</u>, 925 So.2d at 698-99.  Once again, Petitioner has raised arguments that were well suited to a closing argument at trial, but both the jury and the state judicial system have now addressed those arguments in an objectively reasonable fashion.  Thus, the arguments do not permit habeas relief under the demanding standard of Section 2254(d).

**Videotaped Statements**

---

[2] "[U]nder <u>Jackson</u>, the assessment of the credibility of the witnesses is generally beyond the scope of review."  <u>Schlup v. Delo</u>, 115 S.Ct. 851, 868 (1995).

Louisiana has a statutory scheme that permits the admission of a videotape of an oral statement of a protected person, including young children, if the statement meets certain requirements regarding accuracy and reliability of the recording.  Another requirement is that the statement "was not made in response to questioning calculated to lead the protected person to make a particular statement."  La. R.S. 15:440.5A.

The trial court conducted a pre-trial hearing on March 24 and April 21, 2004 regarding the admissibility of the statements that were recorded at the Gingerbread House. Wendy Westerman, a forensic interviewer at the Gingerbread House, testified about her training and the particular statements that were taken in this case.  She denied that any of her questions were calculated or likely to lead the children to make a particular statement. Defense counsel focused on the "leading" issue in her cross-examination.  She pointed to questions such as, "Was he standing next to you or where was he?" that elicited an answer, "Standing next to me."  Tr. 268-84.  Detective Simmy Brown of the Shreveport Police Department testified that he observed the interviews on closed circuit television and communicated to Ms. Westerman (via an earpiece) regarding areas of the questioning that needed clarification or further exploration.  Tr. 284-93.

The trial judge, after hearing the evidence and argument by counsel, ruled from the bench that the questions were not leading and that the videotapes were otherwise admissible. Tr. 293-94.  Petitioner renewed his objection to the videotape on direct appeal, and the appellate court observed that the tapes showed the children answering several open-ended

questions that yielded information that did not originate with the interviewer.  Thus, the trial court was held not to have erred in admitting the tapes.

Petitioner attacks the state court's decision to admit the tapes, but it is not the role of a federal habeas court to review ordinary evidentiary rulings or the state court's application of state law in a trial.  Petitioner also urges that the proceedings violated his rights under the Sixth Amendment's Confrontation Clause.  A federal habeas court does have a duty to determine whether evidentiary rulings violate that provision, so the Confrontation Clause claim is subject to habeas review.  Jones v. Cain, 600 F.3rd 527, 536 (5th Cir. 2010).

In Coy v. Iowa, 108 S.Ct. 2798 (1988), the Court held that the Confrontation Clause provides a criminal defendant the right to confront face-to-face witnesses who give evidence against him at trial, and the placement of a screen between the defendant and a child sexual assault victim during testimony violated Confrontation Clause rights.  On the other hand, the Court has recognized that not every instance in which testimony is admitted requires an actual face-to-face encounter.  For example, certain hearsay statements may be admitted despite the inability of the accused to confront the declarant at trial.  Maryland v. Craig, 110 S.Ct. 3157, 3164 (1990).  The Craig Court went on to uphold a conviction entered after a child testified by a one-way closed circuit television procedure that permitted cross-examination although it was not on a face-to-face basis.

Petitioner generally argues that his Confrontation Clause rights were violated, but he does not articulate how a violation was committed that would be recognized under the Coy and Craig line of cases or any other clearly established Supreme Court precedent. Each of

the child witnesses personally took the stand and testified about their videotaped statements. Each child was available for and actually subjected to cross-examination by defense counsel, without benefit of any screen or other interference with Petitioner's ability to see each accuser face-to-face.  There is no basis, under these circumstances, to find that the state court's adjudication of this issue was an objectively unreasonable application of clearly established Supreme Court precedent as Section 2254(d)(1) requires for habeas relief.

**Ineffective Assistance of Counsel**

### A. Introduction; Burden

Petitioner argues that his trial counsel was ineffective for various reasons.  To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's Strickland claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold.  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so

a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  <u>Id</u>.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  <u>Id</u>.

### B. No Request for Responsive Verdicts

The trial court instructed the jury on the elements of aggravated rape, sexual battery, molestation of a juvenile, and indecent behavior with a juvenile.  Tr. 480-85.  The judge also charged the jury on certain lesser responsive verdicts that could be returned if the jury found the accused not guilty of the principal charges.  With respect to molestation of a juvenile, the jury was told that it could return verdicts of guilty as charged, guilty of indecent behavior with a juvenile, or not guilty.  Tr. 486.

The jury acquitted Petitioner of the aggravated rape charges, but it voted 10-2 to convict on all of the molestation counts (one of which the appellate court reduced to attempted molestation).  Petitioner argued on direct appeal that the trial court erred in failing to instruct the jury regarding other responsive verdicts, including *attempted* molestation of a juvenile and *attempted* indecent behavior with a juvenile.  The issue was deemed waived

for the lack of a contemporaneous objection.  State v. Houston, 925 So.2d at 704-05.

Petitioner asserted this claim in his prior habeas petition, but this court pointed out that, even

if the argument were not subject to a procedural bar, the failure of a trial court to include a

responsive verdict in a non-capital case does not give rise to a federal constitutional issue that

is cognizable on habeas review.  Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988);

Alexander v. McCotter, 775 F.2d 595, 601 (5th Cir. 1985).

Petitioner has not re-urged that claim in his current petition, but he has continued to

press a related argument that his trial counsel was ineffective for failing to object to the lack

of such responsive verdicts in the jury instructions or verdict sheets.  Petitioner presented this

claim to the state court on direct appeal. He argued that he was prejudiced because it was a

close case, the jury verdict suggested a compromise, and Petitioner believed that the jury

would have convicted him of less serious crimes if it could have done so.  The state appellate

court agreed that the verdict appeared to be a compromise, but the nature of the compromise

could not be known.  Perhaps some of the jurors agreed to acquit on the aggravated rape

charges they believed were well founded in exchange for the agreement of others to convict

on all of the molestation charges rather than the lesser offense of indecent behavior.  There

are all sorts of other possibilities, but they are just that: possibilities.  There is no way to

know with any degree of certainty what the jury would have done had it been charged with

additional responsive verdicts.  The state court stated that it was "possible that it was a

defense strategy to give the jury few alternative verdicts."  The court ultimately determined

that there was no prejudice by counsel's not insisting on more responsive verdicts.  State v. Houston, 925 So.2d at 704-07.

Competent counsel often elect not to request many or any possible responsive verdicts.  The rationale is to avoid giving the jury a basis for finding an accused guilty of something where the prosecution was unable to prove the elements of the original crime charged.  This "all or nothing" approach is sometimes good strategy and sometimes not, depending on the circumstances, but it is the kind of strategic decision that does not give rise to a grounds for habeas relief merely because it did not win the case.  Jason v. Cain, 2006 WL 2949523, **14-15 (E.D. La. 2006), citing Lake v. Portuondo, 14 F. Appx. 126, 128 (2d Cir. 2001) ("A decision to forgo a charge on lesser included offenses is strategic in nature.").  Also, "counsel's failure to push for inclusion of a special charge on a lesser offense may result from an equally valid strategic choice to avoid a possible compromise verdict, opting instead to try to obtain a hung jury or an outright acquittal."  Parker v. Cain, 445 F.Supp.2d 685, 709 (E.D. La. 2006) (deferring to state court decision on a similar Strickland claim).

Even assuming error by trial counsel, Petitioner must still establish prejudice under Strickland.  That requires Petitioner "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id., 104 S.Ct. 1t 2068.  And a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

Richter, 131 S. Ct. at 786, quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004). The state appellate court assessed the prejudice error, citing the appropriate Strickland standard, and made a considered decision that prejudice had not been established. One may construct various theories and arguments about how instructions on the additional responsive verdicts *might* have impacted the jury's decisions. There will never be a case in which the court will know with certainty what changes would have occurred, but there will be cases in which the record strongly suggests a particular outcome. This is not such a case, and nothing more than pure speculation can be offered as to how the responsive verdicts would have affected the outcome of the trial. Fairminded jurists could disagree on whether there was potential Strickland prejudice stemming from the lack of a request for additional responsive verdicts. That room for disagreement means habeas relief is not permitted.

### C. Post-Conviction Claims

After Petitioner dismissed his original federal habeas petition, he returned to state court and litigated a post-conviction application that asserted that trial counsel was ineffective for a number of reasons. He argues in this federal petition that counsel did not adequately communicate with him and give him notice of trial sufficiently in advance that he could summon his witnesses. He asserted that he had an "alibi" witness, Mr. Terrance Ashton, who should have been called to testify.

Petitioner's filing with the state court was accompanied by two affidavits from Mr. Ashton, who said he is the son of Petitioner's wife (and thus the uncle of the victims). Ashton testified that he had been a sergeant in the Army for several years and came to know

Petitioner well when Ashton was stationed at Fort Polk from January 2001 to December 2002 (the crimes in this case came to light in late December 2002 and were alleged to have occurred during the preceding months).  Ashton testified that he spent several weekends at home with his mother and Petitioner and never saw Petitioner behave inappropriately towards his nieces and nephews.  Petitioner was fond of the children, and they always seemed happy to see him.  Ashton testified that the children accompanied him to Fort Polk on several occasions even after the alleged incidents of molestation but never mentioned that Petitioner had abused them or that they were afraid of him.  Ashton said he also saw no unusual behavior by the children that would have suggested they had been abused.  Tr. 67-69.

The State's response included an affidavit from trial counsel Michelle Andrepont who testified that she had been practicing law since 1992 and had devoted her practice to criminal defense.  She testified that she did interview several of Petitioner's proposed witnesses, but found them to not be helpful in defending the allegations.  Specifically, she interviewed Terrance Ashton, but she determined that he did not have any specific knowledge about the allegations or other testimony that would be helpful to the defense.  (She does not say whether what he told her was consistent with the statements in his affidavit.)  She interviewed other witnesses and reached the same conclusion.  Still others could not be located.  Andrepont testified that she investigated the case, was adequately prepared for trial, and she succeeded in getting Petitioner acquitted on three counts of aggravated rape, each of which carried a natural life sentence.  Tr. 271-2.

The trial court summarized Petitioner's various complaints about counsel, including not calling witnesses, and assessed them under the Strickland standard.  The judge found: "None of the allegations set forth in Petitioner's application are sufficient to prove that defense counsel failed to exercise reasonable professional judgment."  The court further found that Petitioner did not show that, but for counsel's decisions, the outcome of the trial would have been different.  Tr. 918-21.  The state appellate court denied a writ with a brief observation that, "On the showing made, the applicant failed to prove that relief should be granted" and that "counsel's conduct did not fall below the objective standard of reasonableness set forth by Strickland[.]" Tr. 1023.  The Supreme Court of Louisiana denied a writ without comment.  Tr. 1237.

Petitioner's state court filings named other witnesses who he alleged should have been called, but he did not submit affidavits or any specific information about those witnesses. Petitioner has not repeated his arguments about the other witnesses in his federal application, but to the extent he might attempt to do so the claims lack merit.  A habeas petitioner who complains that his counsel was ineffective for not calling a witness bears a heavy burden. He "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3rd 527, 538 (5th Cir. 2009).  Petitioner has not come close to meeting that burden with any witness except Terrance Ashton.

With respect to Ashton, his offering in his affidavit is that he was around the children on some weekends and never saw or heard of any unusual activity.  Such testimony might have benefitted the defense, but it was certainly not the "alibi" or saving testimony as Petitioner characterizes it.  Ashton does not say that he was available and willing to testify at trial, which is no certainty given his military duty and reference in his affidavit to having to "go overseas" before he could learn the truth.  A negative for Ashton as a witness is his admission in that the family had a history of sexual abuse ("my older sister did touch me like that") and claims of such abuse by children.  Ashton may have harmed the defense effort if such information had come out during his trial testimony.

Defense counsel testifies that she interviewed Mr. Ashton and made a considered determination, after speaking with him, that calling him as a witness would not benefit the defense.  The presentation of testimonial evidence is a matter of trial strategy.  Day, 566 F.3d at 538.  The state court was presented with evidence to explain counsel's decision not to call Mr. Ashton as a witness, and the state courts made a reasonable determination that counsel did not fall below the deferential standard of Strickland when she made her decision.  As stated with the claim discussed above, fair-minded jurists could perhaps disagree on whether the state court's decision was correct, but that room for disagreement means that habeas relief is not permitted.  The rejection of the Strickland claim was not an objectively unreasonable application of that law.

Petitioner's rambling argument also contends that counsel should have "suppressed" various testimony that was impeached at trial, that his oldest stepdaughter "set him up" by

coercing the victims to fabricate statements, that counsel did not interview him before trial, and counsel "poorly investigated" the case and presented no defense at all.  These conclusory claims that are scattered throughout the Strickland argument are not supported by any specific facts and were quite reasonably rejected by the state courts.  Counsel obviously did mount a substantial defense that gained an acquittal on the three most serious charges.  Petitioner has not shown that any additional interviews of him or further investigation could have changed the verdict.  These final claims also lack merit.

Accordingly;

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of August, 2015.

Mark L. Hornsby
U.S. Magistrate Judge